**Charles Ray BROWN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–82–01217–CR.**

Court of Appeals of Texas, Dallas.

March 20, 1984.

Rehearing Denied March 20, 1984.

Arch McColl, David W. Coody, Dallas, for appellant.

Henry Wade, Dist. Atty., Greg Long, Asst. Dist. Atty., for appellee.

Before STEPHENS, GUILLOT and ROWE, JJ.

ROWE, Justice.

Our former opinion is withdrawn. The following corrected opinion is substituted for it.

Appellant was convicted of aggravated robbery. Punishment was assessed by the jury at confinement for 80 years in the Texas Department of Corrections and a $5,000 fine. Appellant complains in five grounds of error that: (1) the evidence was insufficient to show that the knife used was a "deadly weapon"; (2) the trial court erred in failing to charge the jury on the lesser included offense of robbery; (3) the trial court erred in admitting a prior deferred adjudication order during the punishment phase; (4) the trial court erred in failing to apply the law of parties to the facts in its charge; and (5) the trial court erred in overruling appellant's objection to improper prosecutorial argument. We agree with appellant's contention under his fourth ground of error, and accordingly, we reverse.

■ Appellant contends that the trial court erred in failing, over proper objection, to apply the law of parties to the facts in the charge to the jury. In order to determine whether a charge on the law of parties is required:

[T]he trial court should first remove from consideration the acts and conduct of the non-defendant [or co-defendant] actor[s]. Then, if the evidence of the conduct of the defendant then on trial

would be sufficient, in and of itself, to sustain the conviction, no submission of the law of principals [parties] is required.... On the other hand, if the evidence introduced upon the trial of the cause shows, or raises an issue, that the conduct of the defendant then upon trial is not sufficient, in and of itself, to sustain a conviction, the State's case rests upon the law of principals [parties] and is dependent, at least in part, upon the conduct of another. In such a case, the law of principals [parties] must be submitted and made applicable to the facts of the case.

*McCuin v. State*, 505 S.W.2d 827, 830 (Tex. Cr.App.1974).

■ Appellant and two cohorts robbed the complainant in a dark parking lot outside a Dallas dance hall. Appellant admitted in a written statement introduced at trial that he participated in the robbery and that one of the other robbers wielded a knife. Complainant testified that all three robbers were armed. He could not identify appellant or his co-defendant; he testified, however, that they were similar in size to the two shorter robbers and that one of the short robbers had a knife and the other had a gun. Thus, although there is sufficient evidence of appellant's presence and active participation in the offense to find him guilty of the offense as a party, there is no probative evidence that appellant *personally* used or exhibited "a deadly weapon, to-wit: a knife," as alleged in the indictment. The charge on parties was, therefore, required, and the failure to include it was reversible error.

The trial court gave an abstract statement of the law of parties and then made the following application:

Now if you find from the evidence beyond a reasonable doubt that on or about the 23rd day of July, 1982, in Dallas County, Texas, the defendant, Charles Ray Brown, *either acting alone or as a party*, did unlawfully, then and there while in the course of committing theft and with intent to obtain or maintain control of the property of Tom Mey-

er, hereinafter called complainant, the said property being current money of the United States of America, without the effective consent of the said complainant and with intent to deprive the said complainant of said property, did then and there by using and exhibiting a deadly weapon, to-wit: a knife, knowingly and intentionally threaten and place the said complainant in fear of imminent bodily injury, then you will find the defendant guilty of aggravated robbery.

If you do not so believe or you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict "not guilty." [emphasis added]

■ The only reference in this application to the law of criminal responsibility is the phrase, "either acting alone or as a party." This charge did not require the jury to find that any other persons had committed all or part of the robbery in question, and whether appellant was criminally responsible for the acts of that other party (or parties). The Court of Criminal Appeals has held that such an application is insufficient when a charge on parties is required. *Jaycon v. State*, 651 S.W.2d 803 (Tex.Cr.App.1983) (*en banc*). This case must therefore be reversed.

Appellant further contends, in his first ground of error, that the evidence was insufficient to prove that the knife used in the offense was a deadly weapon. Appellant admitted in a written statement introduced into evidence that a knife was wielded by one of the three robbers involved in the instant offense; therefore the only issue before us is whether the knife or knives used were deadly weapons.

■ A knife is not a deadly weapon per se, but it can qualify as such through the manner of its use, its size and shape and its capacity to produce death or serious bodily injury. Wounds need not be inflicted before a knife can be determined to be deadly. *Denham v. State*, 574 S.W.2d 129 (Tex.Cr.App.1978) (*en banc*). Words spoken by the assailant, such as threats, may be considered in determining the knife's deadly character, *Williams v. State*, 575

S.W.2d 30 (Tex.Cr.App.1979), and the distance between assailant and victim has been termed a "critical evidentiary factor," *Herbert v. State*, 631 S.W.2d 585 (Tex.App. —El Paso 1982, no pet.). Expert testimony on this issue is not necessary; lay testimony will suffice in most instances. *English v. State*, 647 S.W.2d 667, 669 (Tex.Cr.App. 1983) (*en banc*). Although descriptions of the knife by witnesses and introduction of the knife into evidence are of aid to the jury in its determination of the knife's deadly character, evidence has been held sufficient to sustain the jury's finding where no knife was introduced or clearly seen by witnesses. *English*. Each case must be examined on its own facts to determine "whether the manner of the weapon's use and intended use was such as to allow the jury to infer that the weapon was deadly." *English*, 647 S.W.2d at 669.

■ Complainant in this case testified that he was seated on the hood of his car in the parking lot of a club in Dallas, late at night, when 3 black men, one of whom was appellant, approached him and asked for a light. He gave one of the three his cigarette lighter, and as the man returned the lighter to complainant, he put a knife to complainant's left side and told him not to move. Complainant then felt one of the other men put a knife to his right side, about 5 inches above his waist. Complainant felt both knives, and "it felt like they were fixing to go into my skin, and they told me not to move." The men then also held a gun to complainant and forced him into his car, which the three men also entered. (Although a gun was used, appellant was indicted for use of only a knife.) Complainant's money was taken from him, and with one knife still held against his right side and the gun held to the back of his head, complainant was driven to an underpass where he was tied up and left. Complainant was afraid "they were going to kill me," although the only verbal threats were "don't move," and "don't move and you won't get hurt." [We note that the Court of Criminal Appeals has held that language such as "you won't get hurt

if you cooperate" constitutes an implied threat of death or serious bodily injury when coupled with use of a knife, *Berry v. State*, 579 S.W.2d 487 (Tex.Cr.App.1979).] Complainant saw only 1½ inches of one blade and did not see the other knife at all; a knife, however, was found in complainant's car after the car was recovered from two of the three robbers. This knife was a workman's utility or putty knife with a 4 inch blade, dull on one edge and sharp on the other. It was admitted into evidence, and complainant identified it as "similar to" the one used during the robbery and stated positively that it was not in the car prior to the robbery. The jury could believe from this circumstantial evidence that this knife was one of those used in the robbery. They were therefore entitled, from examining the knife and considering the circumstances surrounding its use, to conclude that the knife used was a deadly weapon as alleged in the indictment. Appellant's first ground of error is overruled. Accordingly, we remand this case for a new trial.

We also address appellant's third ground of error, because resolution of the issue presented may be necessary to the trial court on remand. In appellant's third ground of error, he complains that the trial court erred in admitting, at the punishment stage, a deferred adjudication order placing appellant on probation on a charge of burglary of a building. Appellant objected at trial and now contends that this order is inadmissible because it is not a "prior criminal record" as defined in TEX.CODE CRIM.PROC.ANN. art. 37.07(3)(a) (Vernon 1981). We are fully cognizant of the opinion of the Court of Criminal Appeals in *Baehr v. State*, 615 S.W.2d 713 (Tex.Cr. App.1981), in which Judge Clinton held a deferred adjudication order to be inadmissible as a prior criminal record. *Baehr*, however, did not address the effect of TEX. CODE CRIM.PROC.ANN. art. 42.12, § 3d(c) (Vernon 1979) upon such an order's admissibility. We are persuaded that *Baehr* is not controlling and agree with that portion of the opinion by the Beaumont Court of Appeals in *Verrett v. State*, 648 S.W.2d 712, 715 (Tex.App.—Beaumont

1982), *pet. ref'd*, 646 S.W.2d 448 (Tex.Cr. App.1983), which held that:

Sec. 3d(c) of Art. 42.12 allows "upon conviction of a subsequent offense, the fact that the defendant had previously received probation [to] be admissible before the court or jury to be considered on the issue of penalty." We believe that the State's admission into evidence of appellant's deferred adjudication order complied with this statute.

Unlike the appellant in *Verrett*, appellant in the instant case was still serving out his probation at the time of this trial. TEX.CODE CRIM.PROC.ANN. art. 42.12, § 3d(c), expressly authorizes admission of evidence of prior deferred adjudication probation after probation has been served, the charge has been dismissed, and all other legal disabilities have been removed. If admissible afterwards, there is even better reason for a deferred adjudication order to be admissible where probation is still being served. We hold, therefore, that on the issue of penalty a deferred adjudication order is admissible under article 42.12, section 3d(c), whether or not the full probation period has been served. Appellant's third ground of error is overruled.

We need not consider appellant's other grounds of error. The judgment is reversed and the cause remanded.

STEPHENS, Justice, dissenting.

On motion for rehearing, I am persuaded that the majority opinion of this panel is erroneous both in its analysis of the evidence, and its interpretation of the applicable law. The judgment of the trial court should have been reversed and the cause remanded for a new trial on a charge not greater than robbery, because the evidence offered was insufficient to prove that the knife, or knives used in this case were deadly weapons, as charged in the indictment. Consequently, I respectfully dissent.

Appellant was tried jointly with one Charles Callahan for aggravated robbery. He was found guilty and sentenced by the

jury to eighty years' confinement in the Texas Department of Corrections, together with a $5,000.00 fine.

The pertinent part of the indictment charged that appellant:

did then and there, by using and exhibiting a deadly weapon, to-wit: a knife, knowingly and intentionally threaten and place the said complainant in fear of imminent bodily injury.

First, I agree with the majority that the case must be reversed because the charge failed to apply the law of parties to the facts. At this point, however, I part company with my colleagues.

Appellant contended on appeal that the evidence was insufficient to prove that the knife, allegedly used, was a deadly weapon, and re-urges this contention on motion for rehearing. I agree with appellant.

Late one evening, around midnight, three black men, one who was described as tall, and two who were described as short, approached the complaining witness who was sitting on the hood of his car in a secluded, unlighted parking lot, near a club, where he had been drinking. Appellant was smoking a cigarette, and the tall man asked for a light. After complainant gave him a light from his cigarette, the tall man sat down beside complainant, put a knife at complainant's side, and told him not to move. Complainant did not see the knife, but he felt it against his side. He next felt another knife against his other side. The second knife was held by one of the shorter men. Next a gun was placed at appellant's side, and the tall man took complainant's wallet and keys. He was then told by the tall man to get up real slow and walk around the side, of the car. The tall man then got into the driver's seat, unlocked the doors, and the complainant got into the front passenger seat, while the two shorter men got into the back seat. One of the men in the back seat took hold of complainant's shirt, pulled his head back against the back of the seat, and placed a gun to the back of his head. The other short man in the back seat stuck a knife between the seat and the door and put it to complain-ant's side. Complainant was told not to move and he would not get hurt. The tall man drove the car, while the complainant was held in position with the gun to the back of his head and the knife to his side, to a remote area where complainant was tied and left. The complainant testified that he only saw one to one and one-half inches of the knife blade, and never did see the handle. This is the extent of the direct evidence of the knife and the threats made.

Later, when complainant's car was recovered by the police he found a putty knife and a gun in his car. He testified that neither had been there prior to the incident. The putty knife was introduced into evidence upon complainant's testimony that it was similar to the one used in the commission of the crime.

The majority relies on *Denham v. State*, 574 S.W.2d 129 (Tex.Cr.App.1978) (*en banc*), for the proposition that wounds need not be inflicted before a knife can be determined to be deadly; on *Williams v. State*, 575 S.W.2d 30 (Tex.Cr.App.1979), for the proposition that words spoken by the assailant, such as threats, may be considered in determining the knife's deadly character; on *Herbert v. State*, 631 S.W.2d 585 (Tex.App.—El Paso 1982, no pet.), for the proposition that the distance between assailant and the victim is a "critical evidentiary factor;" and on *English v. State*, 647 S.W.2d 667, 668–69 (Tex.Cr.App.1983) (*en banc*), for the proposition that expert testimony is not necessary; that lay testimony will suffice in most instances; and that, although admission of descriptions of the knife by witnesses and introduction of the knife into evidence are of aid to the jury in its determination of the knife's deadly character, evidence has been held sufficient where no knife was introduced or clearly seen by witnesses. I have no quarrel with the propositions of law for which these cited cases stand. However, an analysis of the facts of those cases will not support the legal conclusion as to the sufficiency of the evidence found by the majority under the facts of this case.

In *Denham*, the weapon used was a butcher knife with a seven or eight inch blade; the complainant was stabbed, and he testified that: "She was going to kill me." The knife was the only weapon used. In *Williams*, the defendant stabbed two people with a knife; one was stabbed twice in the back, was treated at a hospital for the wound, and was unable to work for a week and a half. The other victim received multiple stab wounds, one in the shoulder to the extent that the muscle came out of the skin and had to be placed back into the shoulder by a bystander; the wound required twenty-five stitches, and he was unable to lift anything for three months after the attack. The court reasoned that because the wound did in fact inflict a serious injury, shown by the protracted impairment of the function of the victim's arm, that the evidence was sufficient to prove that the knife was used in such a way that it was capable of causing serious bodily injury. In *Herbert*, the knife was not offered into evidence. It was described as a kitchen knife which was being used to slice an orange immediately before the assault. Defendant held the knife to his common-law wife's throat, and threatened to kill her. The skin was not punctured. The court held that to categorize an assaultive weapon as deadly, such finding must be based upon the evidence of the size and shape of the knife, its manner of use and its capacity to inflict death or serious bodily injury, and consideration of any wounds inflicted or words spoken. The court found the evidence sufficient. It also pointed out in its opinion, however, that two recent cases had been reversed because of the insufficiency of the evidence to support the characterization of the weapons used as being deadly. *Davidson v. State*, 602 S.W.2d 272 (Tex.Cr.App.1980), and *Alvarez v. State*, 566 S.W.2d 612 (Tex.Cr.App.1978). In *Davidson*, the assailant, at a distance of six feet, with a three-inch-blade pocket knife, threatened a person, yet no injuries were inflicted. In *Alvarez*, the assailant advanced on a police officer with a sharp, hook-type, linoleum knife. The officer shot him in the leg and he continued to advance a short distance before surrendering. No evidence was offered as to the knife's dimensions, and no wounds were inflicted. Finally, in *English*, the weapon used was not introduced into evidence, and it was described by the victim as a small knife with a curved tip. While the knife was held to the victim's throat by a confederate; defendant said "I ought to kill you:" and the complainant testified, "I was scared he was going to kill me right there. He had that knife poked in my throat." The court held that appellant and his confederate clearly implied by their words and actions that in the manner of its use or intended use the knife was capable of causing death and serious bodily injury, and that the victim's testimony was sufficient to support the jury's implied finding that the knife exhibited or used in the robbery was a deadly weapon.

In this case there is no evidence that the putty knife, which was introduced into evidence, was one of the knives actually used. The length of the knife blade, as seen by the complainant, was a maximum of one and a half inches. The knife was not placed near a vital organ. No wounds were inflicted. The threat made was not to kill or to inflict serious bodily injury. It was more in the nature of an admonition to complainant that he would be "hurt" if he moved. The complainant did testify, in response to questions by the prosecutor, "for the record," that the two knives, in the way they were being used, could have caused "death or serious bodily injury." He also testified that he had seen the barrel of the gun, and that he believed it to be a real gun that could cause "death or serious bodily injury." The complainant did testify, that when he was taken out of the car by all three men and told to lie down with his hands behind him, he thought they were going to kill him. I am compelled to believe that the complainant's fear that he would be killed resulted from the use of the gun, rather than from the use of the knives. I also think it significant, that in a hearing outside the presence of the jury, the complainant testified that none of the

words spoken to him were threats. Had the appellant been charged with the use of a firearm in the commission of the robbery, the evidence would have been sufficient to find him guilty as a party. However, I conclude, and I would hold the evidence insufficient to find that the knife was a deadly weapon as charged in the indictment.

Having concluded that the evidence was insufficient to convict appellant of aggravated robbery, I also would hold that the trial court's failure to submit the lesser included offense of robbery in its charge to the jury, when objection to the charge was properly made by appellant, constitutes reversible error. *Eldred v. State,* 578 S.W.2d 721 (Tex.Cr.App.1979).

I also disagree with the majority's instructions to the trial court that, upon re-trial of the case, a deferred adjudication *order* placing appellant on probation on a charge of burglary of a building is admissible. Such a holding is in direct conflict with the holding in *Baehr v. State,* 615 S.W.2d 713 (Tex.Cr.App.1981). The rationale of *Baehr,* as well as its explicit wording, prohibits the introduction of such an order. Furthermore, the admission of such an order is not authorized by TEX.CODE CRIM.PROC.ANN. art. 42.12 § 3d(c) (Vernon 1979). This section permits only *the fact* that a defendant has previously received probation, upon conviction of a subsequent offense, to be offered into evidence at the punishment stage. Consequently, I also disagree with *Verrett v. State,* 648 S.W.2d 712 (Tex.App.—Beaumont 1982), *pet. ref'd,* 646 S.W.2d 448 (Tex.Cr.App. 1983) (*en banc*), upon which my colleagues rely. The Court of Criminal Appeals refused appellant's petition for discretionary review in *Verrett,* but it specifically stated that its action should not be interpreted as an adoption or approval of the reasoning used by the lower court in disposing of the ground of error concerning the admissibility of a deferred adjudication order at the punishment phase of trial.

I would reverse and remand this cause for a new trial, with instructions that upon re-trial, appellant could be convicted of no crime greater than robbery.